**United States District Court**
For the Northern District of California

1
2
3
4                                                    **E-FILED on**   1/23/2012
5
6
7
8                     IN THE UNITED STATES DISTRICT COURT
9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
10                             SAN JOSE DIVISION
11

| | |
|---|---|
| 12   JOSEPH RONALD TACCI, | No. C-11-04684 RMW |
| 13            Plaintiff, | |
| 14         v. | ORDER GRANTING IN PART AND |
| 15   CITY OF MORGAN HILL, MORGAN HILL | DENYING IN PART DEFENDANTS' MOTION TO DISMISS |
| 16   POLICE DEPARTMENT, EX-CHIEF BRUCE CUMMING, OFFICER DANIEL ORTEGA, | |
| 17   OFFICER MAX CERVANTEZ, OFFICER RICK RODRIGUEZ, DOES 1-25, | **[Re Docket No. 7]** |
| 18            Defendants. | |

19

20          This action arises from the alleged wrongful arrest of plaintiff Joseph Ronald Tacci

21   ("plaintiff") by officers of the Morgan Hill Police department.  Plaintiff asserts violations of

22   constitutional, statutory and common law rights against defendants Officer Daniel Ortega, Officer

23   Max Cervantez, and Officer Rick Rodriguez, and their employers, defendants City of Morgan Hill,

24   Morgan Hill Police Department, and Ex-Chief Bruce Cumming (collectively "defendants").

25   Defendants move jointly to dismiss.  On December 2, 2011, the court held a hearing to consider

26   defendants' motion.  For the reasons set forth below, the court GRANTS IN PART and DENIES IN

27   PART defendants' motion.

28

United States District Court
For the Northern District of California

1

## I.  BACKGROUND

2   Plaintiff's sparsely drafted complaint sets out the following allegations.  On August 30, 2010

3   at approximately 1:00 a.m., plaintiff was sitting in a parked car on the side of the road when he was

4   approached by a Morgan Hill Police vehicle.  Compl. ¶¶ 13-14.  A police officer asked plaintiff if he

5   had been drinking.  *Id.* ¶ 14.  Plaintiff stated that he had not and offered to take a breath test.  *Id.*

6   The officer responded "no, you are going to the police station for a blood test." *Id.* The officer

7   arrested plaintiff and transported him to the police station.  *Id.* ¶ 15.  The arrest was allegedly based

8   on "false police reports and affidavits."  *Id.* ¶ 19.

9   At the police station, a nurse drew blood from plaintiff's arm.  *Id.* ¶ 15.  She also asked him

10   "why his heart rate was 124 beats per minute."  *Id.*  Plaintiff replied that he was nervous due to the

11   manner in which he was treated by the officers and advised the nurse that he was on medication.  *Id.*

12   On October 25, 2010, the Santa Clara District Attorney's Office issued a letter to plaintiff

13   stating that the office declined to prosecute plaintiff.  *Id.* ¶ 16.  Plaintiff subsequently filed a claim

14   for damages with the City of Morgan Hill pursuant to the Government Tort Claims Act.  *Id.* ¶ 17.

15   On December 29, 2010, defendant interim Police Chief Daniel Ortega issued a letter stating that "he

16   [had] thoroughly investigated plaintiff's claim, and deemed [the] complaint as SATISFIED

17   INQUIRY and the officers did not violate the law or department performance standards." *Id.* ¶ 33.

18   Plaintiff's claim with the City of Morgan Hill was rejected on March 24, 2011.  *Id.*

19   Plaintiff filed the instant action on September 21, 2011 alleging causes of action for (1)

20   unlawful arrest; (2) violation of his 4th, 5th, and 14th Amendment rights; (3) violation of civil rights

21   under 42 U.S.C. § 1983; (4) conspiracy to violate civil rights under 42 U.S.C. § 1985(3); and (5)

22   intentional infliction of emotional distress.

23

## II.  ANALYSIS

24   **A.     Section 1983 claim**

25   Title 42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or

26   immunities secured by the Constitution or laws of the United States" by any person acting "under

27   color of any statute, ordinance, regulation, custom, or usage." *Gomez v. Toldo*, 446 U.S. 635, 639

28   (1980).  Section 1983 is not itself a source for substantive rights, but rather a method for vindicating

federal rights elsewhere conferred. *See Graham v. Connor*, 490 U.S. 386, 393-394 (1989). To state a claim under Section 1983, a plaintiff must allege: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct violated a right secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff's second and third causes of action are best construed as Section 1983 claims asserting violations of the Fourth, Fifth and Fourteenth Amendments. Defendants apparently concede that plaintiff has stated a plausible claim for relief under the Fourth Amendment, but challenge the sufficiency of his Fifth and Fourteenth Amendment claims. The court will examine each claim in turn.

### 1. Fifth Amendment Claim

The Fifth Amendment protects an individual from "being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." *Schmerber v. California*, 384 U.S. 757, 761 (1966). Absent the use of the compelled statement in a criminal proceeding, mere coercion does not create a cause of action under Section 1983 for a violation of the Fifth Amendment right against self-incrimination. *Chavez v. Martinez*, 538 U.S. 760 (2003); *see also Higazy v. Templeton*, 505 F.3d 161, 171 (2d Cir. 2007) ("The Supreme Court [in *Chavez*] concluded that an officer could not be subjected to civil liability for an alleged violation of the privilege against compelled self-incrimination where the coerced statement is not thereafter used against the person who gave the statement.").

Here, plaintiff argues that defendants "literally attempted to extract a confession from plaintiff by puncturing his arm and taking his blood." Dkt. No. 11 at 6. However, as the complaint makes clear, the fruits of plaintiff's "confession" were not used against him in a criminal action because the District Attorney's office declined to prosecute his case. Plaintiff argues that defendants' allegedly coercive tactics should nevertheless be actionable, relying heavily on *Cooper v. Dupnik*, 963 F.2d 1220, 1237-1244 (9th Cir. 1992). In *Cooper*, the Ninth Circuit found that coercive police interrogation could give rise to liability under Section 1983 even where the coerced statement was never used in a criminal proceeding. *Cooper* was expressly overruled by the Supreme Court's 2003 decision in *Chavez*, and is therefore inapplicable here. *See Chavez*, 538 U.S. at 765; *Ambrose v. City*

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   *of New York*, 623 F. Supp. 2d 454, 473 (S.D.N.Y. 2009) (noting that *Chavez* overruled *Cooper*).

2       Furthermore, the drawing of blood from a suspect without his consent does not offend the

3   Fifth Amendment privilege against self-incrimination. *See Belgarde v. State of Mont.*, 123 F.3d

4   1210 (9th Cir. 1997) (citing *Schmerber*, 384 U.S. at 761). As the Supreme Court has explained,

5   blood test evidence is "neither … testimony nor evidence relating to some communicative act or

6   writing," and therefore its admission is not prohibited by the Fifth Amendment. *Schmerber*, 384

7   U.S. at 765. Thus, even if the results of plaintiff's blood test were used against him, such conduct,

8   without more, would not give rise to liability under the Fifth Amendment.

9       Accordingly, the court GRANTS defendants' motion to dismiss plaintiff's Section 1983 claim

10  based on an alleged violation of the Fifth Amendment. Given that the complaint clearly indicates

11  that no statement made by plaintiff was admitted against him in a criminal action, the court finds that

12  amendment would be futile. Plaintiff's claim is thus dismissed WITH PREJUDICE.

13          **2.      Fourteenth Amendment Claim**

14      Plaintiff's Fourteenth Amendment claim is based on an alleged violation of the right to

15  substantive due process. In order to state a substantive due process claim, the complaint must show

16  that the government's action was "clearly arbitrary and unreasonable, having no substantial relation

17  to the public health, safety, morals, or general welfare." *Lebbos v. Judges of Superior Court*, 883

18  F.2d 810, 818 (9th Cir. 1989). Deprivations of liberty caused by "the most egregious official

19  conduct," or unauthorized police behavior that might "shock the conscience" may give rise to

20  Section 1983 liability under the Fourteenth Amendment. *Chavez*, 538 U.S. at 774 (aggressive police

21  questioning and interference with a suspect's medical treatment did not violate substantive due

22  process); *County of Sacramento v. Lewis*, 523 U.S. 833, 846-50 (1998) (a police officer's deliberate

23  indifference during a high-speed chase that caused the death of a motorcyclist did not violate due

24  process); *compare Rochin v. California*, 342 U.S. 165, 172, 174 (1952) (overturning on substantive

25  due process grounds a conviction based on evidence obtained by involuntary stomach pumping).

26  "The official conduct 'most likely to rise to the conscience-shocking level,' is the 'conduct intended

27  to injure in some way unjustifiable by any government interest.' " *Chavez*, 538 U.S. at 775 (citing

28  *Lewis*, 523 U.S. at 849).

Plaintiff bases his substantive due process claim on allegations that he was "arrested without warrant or probable cause on fabricated charges, booked into jail and detained, interrogated and made to be a witness against himself, and, after hours of ridicule and humiliation, . . . finally released." Dkt. No.11 at 7. Plaintiff relies again on *Cooper*, in which the Ninth Circuit found a substantive due process violation based on police interrogators' "calculated plan 'to ignore the suspect's Constitutional right to remain silent as well as any request he might make to speak with an attorney . . . to hold the suspect incommunicado, and to pressure and interrogate him until he confessed,' in full recognition that such actions were unlawful under *Miranda* and would render any confession inadmissible at trial." *Stoot v. City of Everett*, 582 F.3d 910, 929 (9th Cir. 2009) (quoting *Cooper*, 963 F.2d at 1224). The *Cooper* court further described the officers' techniques as "sophisticated psychological torture" designed to "extract a confession" after "hours of mistreatment," and the "twentieth-century inquisitorial version of the Star Chamber." *Id.* at 1248.

Unlike in *Cooper*, there is no evidence here that defendants "intended to injure [plaintiff] in some way unjustifiable by any government interest." *Stoot*, 582 F.3d at 929 (citing *Lewis*, 523 U.S. at 849) (finding that officers' arguably coercive interrogation of a mentally ill juvenile did not constitute a violation of substantive due process). Apart from plaintiff's conclusory allegation that he was arrested on "fabricated charges," the complaint makes no reference to the officers' intent in executing his arrest or initiating the blood test. Furthermore, while plaintiff argues in his opposition brief that he was subjected to "ridicule and humiliation," the complaint itself offers no detail describing plaintiff's interrogation or detention. The court therefore cannot conclude that plaintiff's allegations "shock the conscience." *Chavez*, 538 U.S. at 774.

Instead, the clear focus of the complaint is that plaintiff was arrested and detained without probable cause. While such conduct may give rise to liability under the Fourth Amendment, it is not cognizable under the Fourteenth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (arrest without probable cause does not give rise to liability under the Fourteenth Amendment). The *Albright* Court reasoned that "where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing the [ ] claims.'"

**United States District Court**
For the Northern District of California

1    *Id.* (quoting *Graham v. Connor*, 490 U.S. at 395). The court agrees that as in *Albright*, the Fourth

2    Amendment, which proscribes unreasonable searches and seizures, is the proper "constitutional peg"

3    on which to hang plaintiff's allegations regarding unlawful arrest and detention. *Albright*, 510 U.S.

4    at 270 n.4; *see also Podesta v. City of San Leandro*, No. 05-2615, 2005 WL 2333802, at *4 (N.D.

5    Cal. Sept. 21, 2005) (finding that where the "gravamen of [plaintiff's] Complaint is that he was

6    subjected to an unreasonable search and seizure and possibly excessive force," Section 1983 claims

7    were properly brought under the Fourth Amendment rather than the Fourteenth Amendment).

8        Accordingly, the court GRANTS the motion to dismiss plaintiff's Section 1983 claims based

9    on the Fourteenth Amendment. Insofar as plaintiff's claims are based on his alleged unlawful arrest

10   and detention, they are dismissed WITH PREJUDICE. However, plaintiff may amend his claim

11   under the Fourteenth Amendment to include facts describing the specific circumstances of his

12   detention and interrogation in the rather unlikely event that such allegations may give rise to a

13   substantive due process violation.

14   **C.     Municipal liability under Section 1983**

15        Defendants next seek to dismiss plaintiff's Section 1983 claim against the City of Morgan

16   Hill and the Morgan Hill Police Department, arguing that the complaint fails to allege sufficient

17   facts to establish municipal liability.

18        Local governments and municipal agencies are subject to liability under Section 1983 only

19   where the alleged constitutional tort results from an official policy or custom. *See Monell v. Dep't of*

20   *Soc. Servs.*, 436 U.S. 658, 690 (1978). Municipalities may not be held vicariously liable for the

21   unconstitutional acts of their employees under the theory of respondeat superior. *See Bd. of County*

22   *Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Rather, to impose municipal liability under Section

23   1983, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she

24   was deprived; (2) that the municipality had a policy; and (3) that the policy was the moving force

25   behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40 County of Yamhill*, 130 F.3d 432,

26   438 (9th Cir. 1997) (internal citations omitted).

27        Liability based on a municipal policy may be established through proof that: (1) a public

28   employee committed the alleged constitutional violation under a formal governmental policy or

United States District Court
For the Northern District of California

1  longstanding practice or custom that is the standard operating procedure of the local government

2  entity, (2) the individual who committed the constitutional tort was an official with final

3  policymaking authority and the challenged action itself was an act of official governmental policy

4  resulting from a deliberate choice made from among various alternatives, or (3) an official with final

5  policymaking authority either delegated policymaking authority to a subordinate or ratified a

6  subordinate's decision and the basis for it. *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir.

7  1995); *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

8          Defendants argue that plaintiff has "failed to set forth a single allegation regarding any

9  policy, custom or practice of CITY OF MORGAN HILL AND MORGAN HILL POLICE

10  DEPARTMENT, including one supporting any of the alleged constitutional violations."  Dkt. No. 7

11  at 12.  Instead, defendants argue that the complaint describes "a single, isolated incident, which

12  occurred in the absence of any unconstitutional municipal policy."  *Id.* at 13.  As explained below,

13  the court agrees that the complaint, as currently pled, fails to establish that plaintiff's alleged injury

14  resulted from a municipal policy or custom.

15          **1.       Formal Policy or Custom**

16          Plaintiff first alleges that "defendants acted . . . under the color of statute, ordinances,

17  regulations, customs and usages of the Morgan Hill Police Department."  Compl. ¶ 28.

18  This allegation, which merely quotes directly from the text of Section 1983, is insufficient to find

19  that an official policy or longstanding custom is the "moving force" behind the alleged constitutional

20  violations.  *See Bell Atlantic Corporation v. Twombly*, 550 U.S. at 55 ("A plaintiff's obligation to

21  provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

22  formulaic recitation of the elements of a cause of action will not do.").

23          Similarly, plaintiff alleges that "[d]efendants were not properly trained, supervised,

24  disciplined, or in any other way controlled in their behavior."  Compl. ¶ 25.  Again, without factual

25  support, such a conclusory statement is insufficient to state a claim for municipal liability.

26  Furthermore, even if the defendant officers were insufficiently trained as to the requirements of the

27  Fourth Amendment, the complaint does not suggest that such inadequate training amounts to a

28  "deliberate indifference" to the rights of the people with whom the local government comes into

**United States District Court**
For the Northern District of California

1    contact, and is therefore insufficient to establish municipal liability.  *City of Canton v. Harris*, 489

2    U.S. 378, 388 (1989).

3         Plaintiff next argues that the existence of a custom or policy of deliberate indifference to

4    constitutional violations may be inferred from the fact that the interim Police Chief issued a letter

5    stating that the officers' conduct did not violate police department policy.  *See* Dkt. No. 11 at 8.  A

6    number of circuit court decisions have found that inferences regarding municipal policy or custom

7    may be "drawn from subsequent [police department] actions," including a "failure to respond to the

8    situation or to make changes in order to prevent recurring violations."  *Henry v. County of Shasta*,

9    132 F.3d 512, 519 (9th Cir. 1997) (citing *Bordanaro v. McLeod*, 871 F.2d 1151 (1st Cir.1989) and

10   *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir.1985)); *see also McRorie v. Shimoda*, 795

11   F.2d 780, 784 (9th Cir. 1986) (policy or custom may be inferred if, after an excessively violent

12   "shakedown," prison officials took no steps to reprimand or discharge the guards, or if they

13   otherwise failed to admit the guards' conduct was in error).

14        For example, in *Henry*, the Ninth Circuit found that the city's "failure even after being sued

15   to correct a blatantly unconstitutional course of treatment—stripping persons who have committed

16   minor traffic infractions, throwing them naked into a 'rubber room' and holding them there for ten

17   hours or more for failing to sign a traffic ticket or asserting their legal right to be brought before a

18   magistrate—is even more persuasive evidence of deliberate indifference or of a policy encouraging

19   such official misconduct."  *Henry*, 132 F.3d at 520.  Similarly, in *Grandstaff*, the Fifth Circuit noted

20   that after police officers mistakenly killed an innocent person:

21          There were no reprimands, no discharges, and no admissions of error.  The
            officers testified at the trial that no changes had been made in their policies.  If
22          that episode of such dangerous recklessness obtained so little attention and action
            by the City policymaker, the jury was entitled to conclude that it was accepted as
23          the way things are done and have been done in the City of Borger.  If prior policy
            had been violated, we would expect to see a different reaction. If what the officers
24          did and failed to do . . . was not acceptable to the police chief, changes would
            have been made.

25   *Grandstaff*, 767 F.2d at 171.

26        The question of whether a police department's failure to respond to unconstitutional conduct

27   gives rise to an inference regarding a municipal policy or custom appears to be subject to a case-by-

28   case inquiry.  However, the common thread running through the cases finding such an inference is

the police department's silence despite notice of a "*flagrant* violation of [] constitutional rights." *Henry*, 132 F.3d at 520 (emphasis added). By contrast, in this case, plaintiff's complaint to the City of Morgan Hill indicated only that officers arrested him without probable cause, "pushed [him] around and put the handcuffs on too tight" and that defendant Officer Cervantes refused to drive plaintiff back to his car because he was "not a taxi service." Dkt. No. 7-1, Ex. A (Claim for Damages).[1] While such conduct may be found to be unconstitutional, it does not compare to the "flagrant violations" of civil rights found in *Henry*'s naked rubber room debacle or *Grandstaff*'s mistaken police shooting. Furthermore, while the police chief's letter apparently denies any wrongdoing, the complaint does not allege that the Morgan Hill police department failed to make any *prospective* policy changes as a result of plaintiff's complaint. *Compare Henry*, 132 F.3d at 520 (department continued practice even after being sued); *Grandstaff*, 767 F.2d at 171 (no policy changes made as a result of shooting of innocent victim). The court therefore concludes that the failure to discipline or condemn the defendant officers, without more, does not give rise to an inference that the Morgan Hill Police department maintains a policy or custom of violating constitutional rights.

### 2. Ratification

"A municipality . . . can be liable for an isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). To show ratification, a plaintiff must show that the "authorized policymakers approve a subordinate's decision and the basis for it." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) (internal citations omitted). The policymaker must have knowledge of the constitutional violation and actually approve of it. *Id.* A mere failure to overrule a subordinate's actions, without more, is insufficient to support a Section 1983 claim. *Id.*; *see also Koenig v. City of Bainbridge Island*, No.

---

[1] The court takes judicial notice of plaintiff's complaint to the City of Morgan Hill under Fed. R. Civ. P. 201. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."). Alternatively, consideration of the contents of plaintiff's complaint is proper under the incorporation by reference doctrine, which permits a district court to consider on a motion to dismiss any documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir. 1999).

C10-5700, 2011 WL 3759779, at *8 (W.D. Wash. Aug. 25, 2011) (stating that "in order for there to be ratification, there must be 'something more' than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures.").

The identification of an official with final policymaking authority is a question of state law. *St. Louis v. Paprotnik*, 485 U.S. 112, 118 (1988). "State law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of local government's business." *Id.* Under California law, a city's Charter may identify policymaking officials whose ratification of a subordinate's actions can bind the municipality. *See Dagdagan v. Boyd*, 2011 U.S. Dist. LEXIS 134045 (E.D. Cal. Nov. 18, 2011) (finding that the charter of the City of Vallejo established the city police chief as a final policymaker) (citing *Hyland v. Wonder*, 117 F.3d 405, 414 (9th Cir. 1997).

Plaintiff suggests that the police chief's letter should be construed as a ratification of the arresting officers' allegedly unconstitutional actions. As a threshold matter, the complaint fails to allege that interim Police Chief Ortega is a "final policymaker" under state law. Assuming, however, that the police chief is a final policymaker, the question of whether plaintiff has shown that the police chief "ratified" the subordinate officer's allegedly unconstitutional actions is a close one.

Several courts have rejected liability on a ratification theory based on allegations that a police department determined after an internal investigation that an officer's conduct did not violate legal or departmental standards. *See Peterson v. City of Forth Worth Texas*, 588 F.3d 838, 848 (5th Cir. 2009) (holding that there was no ratification of the use of excessive force where the Chief of Police determined after investigation that the officers complied with department policies); *Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir.1989) (holding that the failure of a police department to discipline in a specific instance is not an adequate basis for municipal liability under a ratification theory). One district court has noted that:

> The law does not say that, whenever an investigative group accepts an officer's version over a victim's differing version, this acceptance establishes a policy for which a municipality may be held liable under § 1983. If that were the law, counties might as well never conduct internal investigations and might as well always admit liability. But that is not the law. The law clearly requires "something more."

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    *Kanae v. Hodson*, 294 F.Supp.2d 1179, 1191 (D.Hawai'i 2003).

2          On the other hand, courts have found the "something more" required to find ratification

3    where the investigation itself was obviously flawed.  *See Larez v. City of Los Angeles*, 946 F.2d 630

4    (9th Cir. 1991) (investigation was conducted by the unit responsible for the alleged violation and its

5    unreliability was highlighted by a study showing that it was "almost impossible for a police officer

6    to suffer discipline as a result of a complaint lodged by a citizen."); *Fuller v. City of Oakland,* 47

7    F.3d 1522, 1534 (9th Cir.1995) (investigation was "grossly inadequate" and contained "glaring

8    deficiencies").

9          Here, the complaint says nothing about the adequacy of the investigation undertaken by the

10   city or the police department.  The court therefore cannot find that the police chief's letter alone

11   constitutes a ratification of the subordinate officer's actions.  Of course, the court recognizes that at

12   the pleading stage, a plaintiff may not have access to the information necessary to demonstrate

13   whether the investigatory process was adequate or not.  Nevertheless, plaintiff here must plead, at

14   the very least, facts showing that interim Police Chief Ortega is a final policymaker under the charter

15   of the City of Morgan Hill, and must include any known facts demonstrating whether the

16   department's investigation of plaintiff's claim was inadequate.  The court therefore GRANTS the

17   motion to dismiss plaintiff's Section 1983 claims against the municipal defendants WITH LEAVE

18   TO AMEND.

19   **D.   42 U.S.C. § 1985(3) claim (Conspiracy to violate civil rights)**

20         Plaintiff does not oppose defendants' motion to dismiss his claims under 42 U.S.C. §

21   1985(3).  Therefore, the court need not address the merits of this issue.  Plaintiff's Section 1985(3)

22   claim is dismissed WITH PREJUDICE.

23   **E.   Unlawful Arrest and Intentional Infliction of Emotional Distress**

24         Defendants argue that plaintiff's first (unlawful arrest) and fifth (intentional infliction of

25   emotional distress) causes of action are barred as to the City of Morgan Hill and the Morgan Hill

26   Police Department because plaintiff's complaint does not identify a valid statutory basis for

27   imposing liability against a public entity.

28

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS—No. C-11-04684 RMW
EDM

United States District Court
For the Northern District of California

1    The California Tort Claims Act provides that "[a] public entity is not liable for an injury,"

2    "[e]xcept as otherwise provided by statute." Cal. Gov't Code § 815(a). It is true that plaintiff cites

3    the statutory bases for his claims in his opposition brief, rather than in his complaint. While this is

4    not a model of good pleading, defendants cite no authority granting a motion to dismiss under

5    similar circumstances. Indeed, the California Supreme Court has noted that the phrase "provided by

6    statute" in Cal. Gov't Code § 815(a) is to be given its "broadest possible meaning." *Nestle v. City of*

7    *Santa Monica* 6 Cal.3d 920, 933 (Cal. 1972). Furthermore, defendants were given ample

8    opportunity to respond to the statutes cited by plaintiff in their reply brief. Absent contrary

9    authority, this court will assume that as long as a liability *is* authorized by statute, plaintiff's claim

10   can proceed.

11   Under California law, "[a] public entity is liable for injury proximately caused by an act or

12   omission of an employee of the public entity within the scope of his employment if the act or

13   omission would, apart from this section, have given rise to a cause of action against that employee or

14   his personal representative." Cal. Gov't Code § 815.2(a). The Ninth Circuit has explained that

15   "California holds counties liable for acts of their employees under the doctrine of respondeat

16   superior, and grants immunity to counties only where the public employee would also be immune

17   from liability." *Robinson v. Solano County*, 218 F.3d 1030, 1038 (9th Cir. 2000).

18   Under Cal. Gov. Code § 820.4, public employees are not entitled to immunity from suit for

19   false arrest or false imprisonment. *See id.* (citing Cal. Gov't Code § 820.4). Because Section 820.4

20   clearly provides that police officers are not immune from suit for false arrest, the City of Morgan

21   Hill and the Morgan Hill Police Department may also be liable under such a theory. *See Robinson*,

22   218 F.3d at 1038 (finding Solano County could be liable for false arrest under California law).

23   Furthermore, because plaintiff's cause of action for intentional infliction of emotional distress

24   is derivative of his claim for false arrest, neither the defendant officers nor the municipal defendants

25   are immune from liability for this claim. *See Brown v. County of San Joaquin*, No. CIV. S-04-2008

26   FCD PAN, 2006 WL 1652407, at *13 (E.D.Cal. June 13, 2006); *cf. Harmston v. City and County of*

27   *San Francisco*, No. C07-01186 SI, 2007 WL 2814596, at *8 (N.D.Cal. Sept. 25, 2007) (finding the

28   city potentially liable under Cal Gov't Code § 815.2(a) for an intentional infliction of emotional

1    distress claim stemming from a claim for which the employee was not immune). The court therefore

2    DENIES the motion to dismiss plaintiff's state law claims for unlawful arrest and intentional

3    infliction of emotional distress against the municipal defendants.

4                                              **III.  ORDER**

5    For the foregoing reasons, the court grants in part and denies in part defendants' motion to dismiss as

6    follows:

7          1.    The motion to dismiss plaintiff's Section 1983 claims based on the Fifth and
                 Fourteenth Amendments is GRANTED. Plaintiff may amend only his Fourteenth
8                Amendment claim to the extent that it relies on factual allegations concerning his
                 detention or interrogation;
9
           2.    The motion to dismiss plaintiff's Section 1983 claims against the City of Morgan Hill
10               and the Morgan Hill Police Department is GRANTED WITH LEAVE TO AMEND
                 (Counts 2 and 3);
11
           3.    The motion to dismiss plaintiff's Section 1985(3) claims is GRANTED WITH
12               PREJUDICE (Count 4);

13         4.    The motion to dismiss plaintiff's claim for unlawful arrest against the City of Morgan
                 Hill and the Morgan Hill Police Department is DENIED (Count 1); and
14
           5.    The motion to dismiss plaintiff's claim for intentional infliction of emotional distress
15               against the City of Morgan Hill and the Morgan Hill Police Department is DENIED
                 (Count 5).
16
     The court notes that plaintiff, apparently in anticipation of this order, has already filed an amended
17
     complaint, which defendants have answered. Thus, the pleadings issues are resolved. Counsel are
18
     to contact the courtroom deputy, Jackie Garcia (408-535-5375) to set a date and time for a case
19
     management conference.
20

21

22

23   DATED:       January 23, 2012                        *Ronald M. Whyte*
                                                          RONALD M. WHYTE
24                                                        United States District Judge

25

26

27

28